IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDY P.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

        Defendant.

Case No. 1:19-cv-00998-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

Brandy P. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is reversed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

*Standard of Review*

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

*Background*

I.   Plaintiff's Application

Born in 1975, Plaintiff was 38 years old on her alleged onset date of May 23, 2014. (Tr. 223.) Plaintiff filed her applications for DIB and SSI on July 16, 2014, alleging disability due to depression and degenerative disc disease of the lumbar spine. (Tr. 223-24, 225-30.) The Commissioner denied Plaintiff's application initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and she appeared and testified at a hearing held on July 11, 2017. (Tr. 34, 99, 961.) A supplemental hearing was held on May 10, 2018. (Tr.

PAGE 2 – OPINION AND ORDER

697-705.) After the hearings, the ALJ issued a written decision dated June 12, 2018 denying Plaintiff's applications. (Tr. 12-31.) The Appeals Council denied review on April 22, 2019, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that decision.

II.     The Sequential Analysis

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

III.     The ALJ's Decision

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff is disabled. (Tr. 12-31.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 23, 2014, her alleged onset date. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the severe impairment of lumbar degenerative disc disease. (Tr. 18.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. (Tr. 20.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. (Tr. 21.)

At step four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (Tr. 29.) At step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, including clerical addresser, touch-up screener, and callout operator. (Tr. 30.) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 30-31.)

Plaintiff argues that the ALJ erred by (1) rejecting her subjective symptoms testimony; (2) improperly evaluating the medical evidence; and (3) rejecting the lay witness testimony.

*Discussion*

I.      Subjective Symptom Testimony

Plaintiff first argues that the ALJ improperly rejected her subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

At the initial administrative hearing, Plaintiff testified that she was unable to work primarily due to leg and back pain, and depression. (Tr. 47, 55.) At the supplemental hearing, Plaintiff testified that her treatment provider said she is not a candidate for back surgery, and that

PAGE 4 – OPINION AND ORDER

her physical limitations exacerbate her depressive symptoms. (Tr. 697.) She testified that her back pain had worsened since the initial hearing, that medications were not very effective, and that she required assistance with daily activities and household chores. (Tr. 705.)

The ALJ rejected Plaintiff's testimony regarding her symptoms and limitations. (Tr. 19-25.) The ALJ first noted that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms conflicted with her reports of daily activities. (Tr. 24-25.) The ALJ may consider a claimant's daily activities in assessing her subjective symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i). Activities that are incompatible with the severity of alleged symptoms can support an ALJ's rejection of a claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, while Plaintiff alleged ability only to perform minor tasks such as wiping down a counter before she needed to lie down with her legs elevated, she also reported packing boxes and moving multiple times during the relevant period. (Tr. 494, 558, 564.) The record, however, also shows that Plaintiff was forced to move due to a pending divorce, and that moving and packing activities exacerbated her back pain. (Tr. 494.) This record does not support a finding that Plaintiff's limited activities contradicted her testimony.

The ALJ next noted that Plaintiff's course of treatment was inconsistent with her testimony. (Tr. 19.) An ALJ may properly discount a claimant's testimony if "the frequency or extent of treatment sought . . . is not comparable with the degree" of her complaints. SSR 16-3p, at 9. Here, the ALJ found that Plaintiff did not receive meaningful treatment or medication for her alleged depressive symptoms, participating in only intermittent counseling, meditation, and yoga. (Tr. 19, 55, 474, 487-88, 710). Sarah Avery-Meyers, however, treated Plaintiff for mental health issues beginning in 2012 and opined that Plaintiff's physical health issues had contributed to increased

depression and impaired cognitive functioning since June 2014. (Tr. 488.) The record reflects that Plaintiff sought counseling consistent with her avowed level of pain and physical limitations.

The ALJ also found that Plaintiff's statements conflicted with the testimony of medical expert Eric Schmitter, M.D. (Tr. 23-25.) The ALJ may discount a claimant's statements if medical opinion evidence contradicts the claimant's subjective testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Dr. Schmitter testified that Plaintiff's diagnostic imaging was "very modest," that objective examination findings were "not very severe," and that there was "not much orthopedic information" overall. (Tr. 23, 700, 704.) Dr. Schmitter also pointed to evidence in the record of negative-to-mild straight leg raise, normal sensation, normal motor function, and normal deep tendon reflexes. (Tr. 699-700, 702.) Dr. Schmitter noted a lack of neurological findings and a lack of evidence of any gait disturbance in the record.

As discussed below, however, Plaintiff's testimony was supported by the opinions of examining physician Glen O'Sullivan, M.D., treating physician Melissa Noble, M.D., and treating counselor Avery-Meyers. By contrast with Dr. Schmitter, who merely reviewed the record, these professionals had treating or examining relationships with Plaintiff and corroborated her testimony of disabling pain and limitations. Further, Dr. Schmitter's observations about mild objective findings are not sufficient to contradict a claimant's testimony regarding her subjective level of pain. On this record, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. *Carmickle*, 533 F.3d at 1161.

II.     Medical Opinion Evidence

Plaintiff next argues that the ALJ improperly rejected the opinions of Glen O'Sullivan, M.D., and Melissa Noble, M.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians."

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id*. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

1. Glen O'Sullivan, M.D.

On July 1, 2014, examining physician Dr. O'Sullivan opined that Plaintiff was completely disabled by leg pain. (Tr. 357-58.) In support of this opinion, Dr. O'Sullivan noted MRI evidence of a herniated disc, annular tears, degenerative disc disease at L4-5 and L5-S1. (Tr. 357.) Dr. O'Sullivan also noted that Plaintiff had not been able to work for the previous month as a landscaper, and recommended pain management and treatment to include acupuncture, physical therapy, and epidural steroid injections or selective nerve root blocks. (Tr. 358.)

The ALJ did not mention Dr. O'Sullivan's opinion in the written decision. While the Commissioner argues that the ALJ was not required to discuss this opinion because it was a disability opinion reserved for the Commissioner, Dr. O'Sullivan cited specific medical findings to support his opinion regarding Plaintiff's limited functioning due to leg pain, and provided recommendations for treatment. Because the ALJ failed to provide any reasons for omitting Dr. O'Sullivan's medical opinion from his discussion, the ALJ erred. *Garrison*, 759 F.3d at 1012.

2. Melissa Noble, M.D.

Dr. Noble was Plaintiff's treating physician. On August 11, 2017, Dr. Noble opined that Plaintiff was incapable of performing even sedentary work. (Tr. 623.) She also found that Plaintiff would occasionally be unable to complete tasks in a timely manner due to her limitations in concentration, persistence, and pace, and that she would likely be absent or unable to complete a full workday five or more times each month. (Tr. 626.)

The ALJ gave little weight to Dr. Noble's opinion because he viewed it as inconsistent with the record as a whole and with the opinion of the medical expert Dr. Schmitter. (Tr. 27.) Here, however, Dr. Schmitter's testimony regarding Plaintiff's spinal condition did not contradict Dr. Noble's findings regarding persistence and pace, and the limiting effects of Plaintiff's pain. Further, Dr. Noble's opinion is supported by the opinions of counselor Avery-Meyers and Dr. O'Sullivan. (Tr. 357-58, 488.) On this record, the ALJ's proffered reason for rejecting Dr. Noble's opinion was not supported by substantial evidence. *Garrison*, 759 F.3d at 1012.

III.   Lay Witness Testimony

Plaintiff next argues that the ALJ improperly rejected the lay testimony of Plaintiff's boyfriend, Daniel Cook, and her roommate, Michael Gottschalk. In a questionnaire describing Plaintiff's limitations, Mr. Cook noted that Plaintiff is in constant pain, that she cannot bend or

PAGE 8 – OPINION AND ORDER

lift, and that she has trouble bathing and dressing. (Tr. 291.) Mr. Cook also wrote that Plaintiff suffers from side effects from her medications, such as fatigue, dizziness, and lack of appetite, and that she is overwhelmed with stress. (Tr. 296.)

Ms. Gottschalk completed a statement stating that Plaintiff is limited in her ability to stand, walk, sit, lift, carry, and bend. Mr. Gottschalk also wrote that Plaintiff suffers from chronic pain and is unable to do most household chores. (Tr. 350.)

The ALJ rejected the lay witness statements, finding that they were not supported by the record. (Tr. 28.) The ALJ may reject testimony from a lay witness if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Inconsistency with the medical evidence constitutes a germane reason for rejecting a lay witness's testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, in support of his rejection of the lay evidence, the ALJ cited "largely unremarkable findings," including mildly abnormal diagnostic imaging, generally normal physical examination findings, and the testimony of Dr. Schmitter. (Tr. 28-29.) Because the lay testimony provides insight into Plaintiff's level of pain and its limiting effects on her functioning, however, there is no straightforward inconsistency with Dr. Schmitter's testimony because the medical expert did not address the limiting effects of Plaintiff's chronic pain. (Tr. 699-704.) Further, mild diagnostic imagining, although not corroborating the lay testimony, nevertheless does not contradict this testimony regarding Plaintiff's level of pain. Because the medical evidence does not conflict with the lay witness statements, the ALJ failed to provide germane reasons for rejecting these statements. *Bayliss*, 427 F.3d at 1218.

*Remand*

When the erroneously rejected evidence is credited as true, remand is appropriate. *Garrison*, 759 F.3d at 1022. Here, the ALJ erred by rejecting Plaintiff's testimony, the medical

PAGE 9 – OPINION AND ORDER

opinions of Dr. O'Sullivan and Dr. Noble, and the lay witness testimony. When this evidence is credited as true, no outstanding issues remain before a finding of disability can be made. This case is therefore remanded for the immediate payment of benefits.

## *Conclusion*

For the reasons stated, the Commissioner's decision is REVERSED and REMANDED for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 26th day of July, 2021.

                                                                          _____
                                                                          JOHN V. ACOSTA
                                                                          United States Magistrate Judge